# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS SELZER,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:24-cv-00706-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 12, 16) |

    Plaintiff Michael Thomas Selzer ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

    Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in its analysis of Plaintiff's mental residual functional capacity and failed to adequately consider the nature and intensity of Plaintiff's alleged physical symptoms.

    For the reasons explained herein, the Court will affirm the decision of the Commissioner.

///

///

# I.

# BACKGROUND

## A.  Procedural History

On March 29, 2021, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning January 30, 2020. (ECF No. 11, Administrative Record ("AR"), 25.)  Plaintiff's application was initially denied on October 13, 2021, and denied upon reconsideration on February 16, 2022. (AR 25.)  Plaintiff requested before a hearing before an ALJ.  On February 17, 2023, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.)  Plaintiff and vocation expert ("VE") Mark Anderson testified. (Id.)  On March 27, 2023, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 35.)  On December 22, 2023, the Appeals Council denied Plaintiff's request for review. (AR 5-9.)

## B.  The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 29, 2021, the alleged onset date. (AR. 28.)  The ALJ found that Plaintiff had the following severe impairments: schizoaffective disorder; bipolar disorder; and posttraumatic stress disorder. (Id.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can perform simple, routine, and repetitive tasks. Plaintiff can perform low stress work; defined as, only occasional decision-making and only occasional changes in the work setting. Plaintiff can tolerate occasional interaction with coworkers and can tolerate being in the vicinity of the public but cannot tolerate direct interaction with the public. (AR 31.)

The ALJ then found that that Plaintiff had no past relevant work, he was 42 on the alleged onset date, and he had at least a high school education. (AR 34.)  The ALJ discussed that transferability of job skills was not material to the determination of disability because Plaintiff did

1  not have past relevant work.  (Id.)  Considering Plaintiff's age, education, work experience, and
2  RFC, the ALJ found that there were jobs that existed in significant numbers in the national
3  economy that Plaintiff could perform.  (Id.)  Accordingly, the ALJ concluded that Plaintiff had
4  not been under disability, as defined by the Social Security Act, from March 29, 2021, through
5  the date of the decision, March 27, 2023.  (AR 35.)

6  Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF
7  No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF
8  Nos. 7, 9, 10.)  Thereafter, the parties filed their briefs on the matter.[1]

## II.

## LEGAL STANDARD

### A.     The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### B.     Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ committed error in its assessment of Plaintiff's mental RFC. (ECF No. 12, pp. 14-19.) Second, Plaintiff contends that the ALJ erred by failing to give clear and convincing reasons why the ALJ rejected Plaintiff's subjective complaints regarding his mental symptoms. (Id. at pp. 19-23.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 16.) The Court agrees with the Commissioner.

### A. The ALJ's Assessment of Plaintiff's Mental RFC

Under this heading, Plaintiffs brings several arguments. First, Plaintiff argues that "the ALJ disagreed with all reviewing physicians, including the consultant that found no severe impairment, and the consultant that found minimal social limitations." (ECF No. 12, p. 14.) Second, Plaintiff contends the ALJ did not explain how the evidence in the record supported the RFC. (Id.) Third, Plaintiff argues that the ALJ erred by discussing medical evidence that was not reviewed by an examining or consulting physician and that this constituted a failure to develop the record. (Id. at pp. 14-17.) In opposition, the Commissioner frames Plaintiff's arguments as all centering around the development of the record and argues that substantial evidence supports the ALJ's determinations. The Court ultimately agrees with the Commissioner and will address

Plaintiff's arguments in the order it views makes the most logical sense.

### 1. Duty to Develop the Record and Medical Evidence Review

Plaintiff argues that the ALJ did not have a medical opinion that reviewed the majority of Plaintiff's mental health records when crafting the RFC. (Id. at p. 14-15.) This error, Plaintiff seemingly asserts, also implicates the ALJ's duty to develop the record. (Id. at pp. 17-18.) The Court is not persuaded.

To begin, the Court notes that the Commissioner starts by arguing that Plaintiff's duty to develop the record was 'forfeited' by Plaintiff's request at the administrative hearing to hold the record open for two weeks in order to submit additional records from the Family Wellness Center. (ECF No. 16, p. 2.) On this, the Court disagrees.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Id., quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001), citing Higbee, 975 F.2d at 562.

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150, quoting Smolen, 80 F.3d at 1288. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted). Similarly, the regulations provide the ALJ may order further consultative examination to "resolve

1  an inconsistency in the evidence or when the evidence as a whole is insufficient to support a
2  determination or decision." See 20 C.F.R. § 416.919a.  Examples of situations under which further
3  developing the record may be required include when the additional evidence needed is not
4  contained in the records of the claimant's medical sources, and when highly technical or
5  specialized medical evidence not available from the claimant's medical sources is needed.  20
6  C.F.R. § 416.919a(b).  Once the duty to further develop the record is triggered, failure to do so
7  constitutes reversible error.  See Tonapetyan, 242 F.3d at 1150-51.

8   This Court recently held that a claimant need not talismanically preserve the issue of the
9  ALJ's duty to develop the record at the administrative hearing in order for judicial review.  Labuga
10 v. Commissioner of Social Security, No. 1:24-cv-00890-SAB, 2025 WL 1911690, at *6 (E.D. Cal.
11 July 11, 2025).  Part of that analysis was the well-trodden explanation from the Ninth Circuit that
12 "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's
13 interests are considered.  This duty exists even when the claimant is represented by counsel."
14 Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  In addition, "an ALJ is to be expected,
15 without issue-specific prompting by the parties, to make the predicate findings that are *necessary*
16 under the governing five-step disability evaluation process to support the conclusions that the ALJ
17 makes."  Obrien v. Bisignano, 142 F.4th 687, 699 (9th Cir. 2025) (emphasis in original).

18  With this in mind, the Court observes that simply because the ALJ holds open the record
19 for additional records at a claimant's request does not necessarily mean the duty to develop the
20 record was even necessarily triggered, much less satisfied.  Notwithstanding a request by a
21 claimant to keep the record open for the introduction of specific documents, the record may
22 nonetheless be incomplete or ambiguous even with the addition of the specific later records.  Here,
23 the Commissioner's forfeiture argument puts the cart before the horse.

24  Therefore, the Court will turn to the duty to develop the record argument and begin by
25 analyzing whether the record was incomplete or ambiguous.  However, to address this issue, the
26 Court must in turn look to Plaintiff's related argument that the ALJ failed to obtain an opinion by a
27 reviewing or consultative physician that "had the benefit of the entirety of the medical records
28 pertaining to Plaintiff's involuntary inpatient psychiatric admission." (ECF No. 12, p. 15.)  Thus,

Plaintiff contends, the ALJ "interpreted medical evidence reviewed by no examining or consulting physician." (Id. at p. 14.)

"While it is apparent that comprehensive consultative examinations of records would be helpful to ALJs, the Court has not found any statute, regulation, or caselaw that establishes that at least one physician must conduct a metanalysis of the 'the majority' of a claimant's mental health treatment records." Scott T. C. v. Commissioner of Social Security, No. 1:23-cv-01776-SAB, 2025 WL 227288, at *5 (E.D. Cal. Jan. 17, 2025); see 20 C.F.R. § 404.1545(a)(3). As in Scott T. C., Plaintiff has not provided the Court will any binding or persuasive authority for this position. Therefore, the ALJ did not err by not obtaining a treating or consultative opinion that had the benefit of the majority of Plaintiff's mental health records. And on this basis, the record was neither incomplete nor ambiguous.

Circling back to the broader argument regarding the duty to develop the record, Plaintiff has not persuasively argued that the record was otherwise incomplete or ambiguous. Rather, Plaintiff's discussion is more focused on what he contends is the ALJ impermissibly interpreting medical evidence (which the Court discusses in the section below). To support this, Plaintiff again argues that the ALJ should have sought a medical opinion that had access to the majority of Plaintiff's mental health record. Yet, with this logic, it would appear that Plaintiff is not arguing that the record was incomplete but that another opinion should have been secured that reviewed the record. The only avenue left would be for Plaintiff to demonstrate that the record was ambiguous. Plaintiff has not demonstrated as such, and the Court does not independently find that the record itself was ambiguous. The Court finds that the ALJ's duty to develop the record was not triggered.

Plaintiff's offered caselaw is not persuasive because it is distinguishable. See Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993) (discussing that the ALJ erred where he relied on a sole medical opinion for the determination that a claimant could perform sedentary work and that opinion, in turn, relied solely on medical records from outside the period of disability); Stevenson v. Colvin, No. 2:15-cv-0463-CKD, 2015 WL 6502198 (E.D. Cal. Oct. 27, 2015) (finding ALJ erred where he relied on a sole opinion that the claimant did not have a severe spinal impairment and that opinion did not have the benefit of the later record evidence nor did the ALJ rely on other

9

1  evidence or explain the later evidence; the court implicitly also found the record to be incomplete
2  given that the later records consisted of medical impressions as opposed to opinions regarding the
3  claimant's ability to work on a function-by-function basis).

4  Regarding these arguments, the ALJ did not err.

### 2. Medical Opinions

While Plaintiff initially argues that the ALJ disagreed with the medical opinions, Plaintiff does not develop this argument further in his brief. (ECF No. 12, p. 14.) In any event, the Court finds that Plaintiff has mischaracterized the ALJ's assessment of medical opinions from the prior administrative proceeding.

Regarding Plaintiff's physical impairments, the ALJ noted that G. Lee, M.D., found that Plaintiff's impairments were not severe. (AR 33.) The ALJ found this opinion to be persuasive because it was supported by citation to evidence and was consistent with the updated treatment notes and Plaintiff's testimony at the recent administrative hearing. (Id.)

Turning to mental health opinions, the ALJ discussed that the opinion of Helen C. Patterson, Ph.D., found that Plaintiff's mental health impairments were not severe. (Id.) The ALJ fond this opinion to not be persuasive because the findings were "inconsistent with the records that show persistent impairment in the ability to perform work activities, despite treatment." (Id.)

Finally, the ALJ discussed the opinion of L. Colsky, M.D., who opined that Plaintiff's mental impairments are severe and that Plaintiff could perform simple, repetitive tasks with limited public contact. (Id.) The ALJ found this opinion to be "somewhat persuasive" because "the record as a whole supports additional social limitation and additional limitations related to stress . . ." (Id.)

Thus, Plaintiff is incorrect in that the ALJ disagreed with all medical opinions. The ALJ agreed with the medical opinion regarding Plaintiff's physical impairments. The ALJ then 'disagreed' with Dr. Patterson's opinion that suggested Plaintiff's mental health impairments were not severe, finding Plaintiff did demonstrate some persistent mental impairments. Similarly, the ALJ agreed with part of Dr. Colsky's opinion except that Plaintiff would require only limited public contact; the ALJ found that the medical record supported *even more* social limitations and

1 additional limitations related to stress.  These mental health findings, as should be apparent, were
2 in Plaintiff's favor.  Plaintiff does not address this fact nor argue that these findings nonetheless
3 were inadequate.  On this basis, the ALJ did not err.

### 3. Explanation of Mental RFC

The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, which means eight hours a day, for five days a week, or an equivalent work schedule. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-9p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945." Id.  An "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original).  As relevant here, when an ALJ assess mental abilities, "[the ALJ] first assess the nature and extent of [a claimant's] mental limitations and restrictions and then determine[s] [a claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. 404.1545(c); 20 C.F.R. 416.945(c).  "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." Id.

In the opinion, the ALJ gave the following limitations in the RFC relevant to Plaintiff's mental impairments:  Plaintiff can perform simple, routine, and repetitive tasks.  Plaintiff can perform low stress work; defined as, only occasional decision-making and only occasional changes in the work setting.  Plaintiff can tolerate occasional interaction with coworkers and can tolerate being in the vicinity of the public but cannot tolerate direct interaction with the public. (AR 31.)

The ALJ then summarized Plaintiff's testimony regarding subjective complaints of mental health impairments:

> The claimant testified that he takes medication to manage his mental impairments: anxiety and depression.  He has experienced auditory hallucinations in the past, but they stopped when he

> started medications to manage hallucinations. He has difficulty being around other people in large groups. He has difficulty with daily tasks such as getting dressed, cooking meals and taking showers. His family helps him with bills, he does not pay them. He takes medications and attends an adult daycare program during the day; he plays bingo and interacts others. He misses meals related to increased symptoms of anxiety or bipolar.

Id. In support of rejecting some of Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, the ALJ began by summarizing Plaintiff's treatment notes, which the Court is compelled to go through.

In a set of medication progress notes from Fresno Behavioral Health, dated April 3, 2020, to March 12, 2021, the ALJ cites that in in December 2020, Plaintiff reported symptoms of isolation and unhealthy friendships. (AR 32, citing AR 501.) However, that record notes that Plaintiff reported that "[s]ocializes periodically with other residents in his apartment [building] so he doesn't feel too lonely." (AR 501.) In the next progress note in the same record, from March 2021, Plaintiff reports "he's struggling with isolation since living alone during pandemic." (AR 498.) Here, Plaintiff also talks about having unhealthy friendships. (Id.) Assuming the ALJ meant to cite to AR 498, the ALJ cites that in same record, Plaintiff was evaluated as having "normal cognition, normal speech, normal mood, average intelligence, cooperative, and with organized thought process." (AR 32.) The Court notes that this record was from outside the alleged onset disability date, of which the ALJ seemed aware. (Id.) The ALJ continued and noted that Plaintiff had been diagnosed with schizoaffective disorder, PTSD, and polysubstance abuse in full sustained remission and that treatment included behavioral health visits and monitored medication. (Id.) The ALJ then found that these examination findings "suggest that these treatments were effective in managing [Plaintiff's] symptoms." (Id.)

The ALJ then generally cites to Exhibit D2F for another record in March 2021. Upon review of the exhibit, it appears that the ALJ is directing the Court to AR 490-94, wherein Plaintiff reported that, despite treatment, he has ongoing issues with depression, anxiety, irritability, and dwelling on the past. (See AR 490.) The ALJ noted that the examination also indicated that Plaintiff was oriented, had logical thought flow, intact memory, normal abstraction, fair judgment, and fair insight. (AR 32; see 492-93.)

The first record the ALJ discusses from within the period of alleged disability that the ALJ discusses is from October 2021. (AR 32.) In an emergency provider note, from Community Medical Centers dated October 4, 2021, it was noted that Plaintiff sought treatment in the emergency room, reporting with auditory hallucinations and was observed to be responding to internal stimuli. (AR 520.) The note also reported that Plaintiff was malnourished. (AR 521.) Under psychiatric symptoms, comments stated that Plaintiff was "[r]esponding to internal stimuli, pressured speech, grandiose thoughts." (Id.) Plaintiff was given benzodiazepine, which calmed him but did not resolve the problem. (AR 522.) Anna von Reinhart, MD, commented that Plaintiff appeared "[d]isheveled, think grandiose delusions, suspect meth +/- mania, VS, exam, and w/u not suggestive of 'organic' cause." (AR 524.) Plaintiff would be transferred to inpatient mental health treatment on a 5150 hold. (AR 522.)

On October 5, 2021, Plaintiff, while in inpatient treatment, presented with nonsensical speech, disorganized thought process, and did not understand why he was being treated. (AR 582; see AR 32.) Plaintiff was also severely underweight. The treatment note indicated that it was "[u]nclear if [Plaintiff] was compliant with medications." (AR 583.) Plaintiff was treated with medication and psychiatric treatment with therapy until October 19, 2021, when he was discharged. (AR 577.)

The ALJ noted that Plaintiff continued treatment with Fresno Behavioral Health in November and December 2021. (AR 32.) The ALJ observed that a progress note dated December 15, 2021, indicated that Plaintiff had normal cognition, above average intelligence, normal insight and judgment, denials of hallucinations, denials of suicidal ideation, organized thought process, and normal speech. (Id.) The Court notes that Plaintiff also discussed increased anxiety. (AR 558.)

Next, the ALJ addressed progress notes from Fresno County Behavioral Health dated from January 2022 to December 2022. (AR 32, citing 655-709.) The ALJ began by generally citing to this year of records and demonstrating that Plaintiff was in fair compliance with treatment. (AR 32.) The ALJ did observe one instance where Plaintiff was getting back from being off his medications but otherwise the notes indicated that Plaintiff was feeling better. (AR 32, citing 656,

13

1 707.) The ALJ stated that the progress notes all indicated that Plaintiff had normal thought
2 content, average intelligence, normal insight and judgment, normal speech, cooperative behavior,
3 and organized thought process. (AR 32-33.) The ALJ also observed that Plaintiff's medications
4 did not change throughout the year. (AR 33.)

5 Upon review of these records, the Court also observes that Plaintiff reported anxiety. (AR
6 656, 662.) Plaintiff reported having problems telling people no and needed to learn how to set
7 limits. (AR 665-66.) Plaintiff showed his licensed clinical social worker his house, which
8 included "an area that has accumulated a lot of stuff that he needs help with managing and
9 cleaning." (AR 666.) At times, Plaintiff reported "laying on the couch more[] so the past couple
10 of weeks, with not much motivation." (AR 667.) Plaintiff stated his fears of setting limits with
11 others would lead to being "completely disconnected." (AR 666, 668.) On June 7, 2022, Plaintiff
12 reported feeling depressed regarding his financial situation and that he had not showered the past
13 five days. (AR 672.) Plaintiff also stated that he had been isolating in his apartment and that "he
14 felt that his life did not feel[] very meaningful for the future." (Id.) Plaintiff stated, "Lately I have
15 been feeling that [it] would [be] better off if I didn't exist." (Id.) At one point, Plaintiff "made a
16 friend with a homeless kitten," (AR 686), but he later found out it belonged to a neighbor. (AR
17 692.) While Plaintiff had "taught the cat to go to his apartment voluntarily," he threw water on the
18 cat twice in order to prevent it from clawing at his door. (Id.) The licensed clinical social worker
19 discussed with Plaintiff that he could give the neighbor the leftover cat food he had secured and
20 offer to help care for the cat. (Id.)

21 In July 2022, Plaintiff began going to an adult day program, eventually attending twice per
22 week. (AR 677-79.) Also in July, hoarding was discussed with Plaintiff and the licensed clinical
23 social worker "observed an incredible amount of thick dust" in Plaintiff's apartment. (AR 680.)
24 In August 2022, Plaintiff stated that he did not want to throw out trash, making several excuses to
25 not clean it out. (AR 681.) The licensed clinical social worker noted that there were layers of
26 paper and multiple pill bottles dating back to 2014. (Id.) In December 2022, Plaintiff reported that
27 he was "doing fine, mild depression." (AR 693.) At other times, Plaintiff reported doing well or
28 feeling better. (AR 695-708.)

1    The ALJ then concluded, following a discussion of the medical opinions, that the record
2 supported the limitations within the mental RFC. (AR 33.)

3    Despite Plaintiff's suggestion otherwise, the Court finds that the ALJ's discussion of the
4 medical record, and Plaintiff's symptoms, adequately supports the RFC. As previously observed,
5 it appears the ALJ credited some of Plaintiff's testimony at the administrative hearing. (AR 33.)
6 And while the ALJ gave a parsimonious discussion regarding Plaintiff's treatment notes from
7 2022, the Court finds the ALJ's discussion to be sufficient. (AR 32-33.) Significantly, Plaintiff's
8 characterizations of these records are at times overblown. For example, the adult day program
9 Plaintiff attended began with two days a week, (AR 681), and then increased to five days a week.
10 (AR 133.) It was noted that Plaintiff "likes [the program] because it gets him out of the apartment
11 and he is around other people from about 8 till 1 PM daily and he has two friends he really likes to
12 hang around." (AR 686.) Though Plaintiff stated that he 'heavily relied' upon the program,
13 Plaintiff has not directed the Court to any record that would suggest that Plaintiff required "a
14 highly structured setting." (ECF No. 12, p. 17.) In addition, that Plaintiff attended the adult day
15 program five days a week cuts against Plaintiff's characterization that Plaintiff "does not leave his
16 home for days at a time," and further, upon review of the records Plaintiff cites, they do not
17 necessarily state that Plaintiff did not leave his home for multiple days consistently. (Id., citing
18 AR 665, 667, 668, 672, 674.)

19    Plaintiff's remaining ancillary arguments are without merit. While the ALJ did not give a
20 line-by-line exergies of Plaintiff's treatment notes from 2022, the Court finds that the ALJ did not
21 paraphrase the record, rendering it not entirely accurate regarding content or tone. The ALJ did
22 not offer a lay medical opinion. Additionally, Plaintiff's assertion that "[t]his District holds that
23 the ALJ must build an accurate and logical bridge to his conclusions," was supported by no
24 caselaw from this District nor the Ninth Circuit. (ECF No. 12, p. 16.)[4]

25    Accordingly, the ALJ did not err.

26

---

27 [4] The Court does not necessarily disagree with the phrase in principle; however, this formulation of such a proposition has not gained traction in this District. Thus, the Court will continue to utilize prevailing Ninth Circuit
28 and District authority regarding this principle.

**B.     Plaintiff's Subjective Complaints**

When discrediting some of Plaintiff's subjective complaints, Plaintiff argues that the ALJ failed to discuss the 2022 treatment notes (discussed above), mischaracterized the reason for Plaintiff's admission to the emergency room, did not discuss third-party, non-medical statements from Plaintiff's uncle. (ECF No. 12, p. 20.)  The Court is not persuaded.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work."  Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony."  Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  Boilerplate statements and general summaries of the evidence, without more, are not enough.  Id. at 1277-78.  That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original).  Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).  "The standard isn't whether [a] court is convinced, but instead

whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

Again, the ALJ summarized Plaintiff's subjective complaints as follows:

> The claimant testified that he takes medication to manage his mental impairments: anxiety and depression. He has experienced auditory hallucinations in the past, but they stopped when he started medications to manage hallucinations. He has difficulty being around other people in large groups. He has difficulty with daily tasks such as getting dressed, cooking meals and taking showers. His family helps him with bills, he does not pay them. He takes medications and attends an adult daycare program during the day; he plays bingo and interacts others. He misses meals related to increased symptoms of anxiety or bipolar.

(AR 31.)

Plaintiff begins by taking issue with the ALJ's determination that with medication and therapy, Plaintiff was able to manage his symptoms. (ECF No. 12, citing AR 33.) Plaintiff again cites to the 2022 progress notes, arguing that these demonstrate that Plaintiff isolated for days at a time, failed to shower for days at a time, was suicidal, and hording. Yet, as the Court previously explained, the record cites do not support Plaintiff's characterizations. In the records Plaintiff cites, the first few do not even touch on the topics Plaintiff raises. (AR 665, 667, 668.) On June 7, 2022, Plaintiff reported feeling depressed, that he had not showered for five days but had taken a shower recently, and wondered if it would be better off if he didn't exist. (AR 672.) However, Plaintiff denied ever wanting to harm himself and denied any intention of harming himself. (Id.) On June 13, 2022, Plaintiff talked about how he had been isolating, but he also talked about attending the adult day program. (AR 674.) On July 26, 2022, Plaintiff's licensed clinical social worker discussing hording with Plaintiff after observing trash bags and thick dust. (AR 680.) Thus, the ALJ was aware of and discussed Plaintiff's difficultly being around people, difficulty showering, and difficulty with daily tasks. (AR 31.) Furthermore, Plaintiff's assertion that he was suicidal is not supported by the record. (AR 672.) Plaintiff explicitly denied suicidal ideation ever or currently and the licensed clinical social worker did not make a finding that would contradict this. Similarly, that a licensed clinical social worker discussed hoarding with Plaintiff does not necessarily mean Plaintiff was hoarding. (AR 680.) And while Plaintiff discussed at times

17

1  isolating, Plaintiff also discussed attending the adult program and making friends. In this section,
2  the Court notes that Plaintiff characterized Plaintiff splashing a neighbor's cat with water as
3  "animal abuse." (ECF No. 12, pp. 21-22.) As previously discussed, that is clearly a
4  misinterpreatation of the situation. Therefore, the Court finds that the ALJ properly considered the
5  2022 treatment notes.

6  Next, Plaintiff takes issue with the ALJ noting that Plaintiff's admission to the emergency
7  room because he "was not persistent with treatment and possibly relapsed on substance abuse that
8  required intensive treatment to regulate his symptoms." (AR 33.) Yet, the record supports the
9  ALJ's observation that Plaintiff's visit to the emergency room in 2021 and was "possibly" due to
10 substance abuse. As noted above, a doctor observed that there was no apparent "organic" cause
11 for Plaintiff's symptoms and that she "suspect[ed] meth +/- mania." (AR 524.) In any event,
12 Plaintiff has not articulated how this observation by the ALJ affected or would affect the analysis
13 of Plaintiff's subjective complaints or, in turn, the crafting of the RFC. This argument is
14 unavailing.

15  Last, Plaintiff argues that the ALJ failed to articulate any reason for rejecting statements
16 from Plaintiff's uncle, a third-party, non-medical opinion. For example, Plaintiff notes that his
17 uncle stated that he tries to get Plaintiff to take better care of himself and that Plaintiff sometimes
18 looks homeless. Plaintiff asserts that his uncle reported that Plaintiff did not eat properly and was
19 obsessive or compulsive about things. His uncle noted that Plaintiff was alone and has other
20 communication issues. (ECF No. 12, p. 22.)

21  Following the implementation of the 2017 regulations, ALJs "are not required to articulate
22 how [they] considered evidence from nonmedical sources using the requirements [that apply to
23 medical sources]." 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (emphasis added). In light of the
24 superseding regulations, that appear clear on their face, the Court seriously questions the propriety
25 of the judicially created "germane reasons" requirement previously articulated by the Ninth
26 Circuit. Compare Hudnall v. Dudek, No. 23-3727, 2025 WL 1379101, at *4 (9th Cir. May 13,
27 2025) (Bumatay, J., concurring) with id. at *3 (Graber, J., concurring).

28  Here, however, the Court need not wade into these riled waters because any error by the

ALJ in not giving a germane reason for rejecting Plaintiff's uncle's testimony was harmless. Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003). The testimony from Plaintiff's uncle was cumulative of the record and of Plaintiff's own testimony.

On August 31, 2021, Plaintiff's uncle filled out a Functional Report, Third Party form, wherein under the heading "Personal Care," that Plaintiff's personal care was "good for the most part." (AR 427.) Under a subheading labeled "Shave," his uncle wrote, "sometimes looks like a homeless person," and later wrote, "when [Plaintiff] has a beard, I try to get him to trim and take better care of himself." (AR 428.) While his uncle noted that he believed Plaintiff was not eating a balanced diet (AR 427), his uncle also stated that Plaintiff made all his meals, daily, and that Plaintiff has always been a "finiky" eater. (AR 428.) Plaintiff could shop in grocery stores for an hour weekly, pay bills, and count change; Plaintiff had issues with a savings account or using a checkbook. (AR 429.) Yet, Plaintiff's uncle expanded that Plaintiff "used to spend money all on a car until he lost his job. Now he is very careful with my money." (AR 430.) Under hobbies, his uncle noted that Plaintiff can be obsessive or compulsive regarding his hobbies regarding history and internet use. (Id.) While his uncle noted that he believed Plaintiff was alone and without friends, in that same answer, his uncle stated that Plaintiff attended AA meetings a couple time a week to socialize, despite possibly not suffering from alcoholism. (Id.) His uncle stated that it was hard at times for him to understand Plaintiff due to Plaintiff's very fast speech. (AR 431.) And when asked to describe how Plaintiff's abilities affect certain areas, his uncle wrote "hard to participate when you go sit in a corner with your head down." (Id.)

As discussed above, elsewhere in the record there are observations of Plaintiff's issues with personal care, eating habits, social and communication issues, and money issues. Indeed, the ALJ noted many of these in his summary of Plaintiff's subjective complaints. Because Plaintiff's uncle's lay witness testimony was substantially similar to evidence that the ALJ appropriately rejected, "the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." Molina, 674 F.3d at 1122.

In sum, the ALJ did not err in his analysis of Plaintiff's subjective complaints, or if there were an error, any such error would be harmless.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Michael Thomas Selzer. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge